No. 13-20144

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

KEITH COFFIN, ON BEHALF OF HIMSELF AND OTHERS SIMILARLY SITUATED;
ERIC JONES; JOSE L. RANGEL; JOSH FOX;
GREGORY ROBINSON; JASON L. VILLAREAL; DUSTIN AKINS;
MASON FULKERSON; ZACHARY LATIOLAIS,

*Plaintiff-Appellant*,

v.

BLESSEY MARINE SERVICES, INCORPORATED,

*Defendant-Appellee*.

On Appeal From the United States District Court
for the Southern District of Texas, Houston Division
Trial Court No. 4:11-cv-00214

AMICUS CURIAE BRIEF OF THE AMERICAN MARITIME ASSOCIATION
IN SUPPORT OF APPELLANT BLESSEY MARINE SERVICES URGING
REVERAL OF THE DECISION OF THE DISTRICT COURT DENYING
SUMMARY JUDGMENT

James C. Winton
Baker & Hostetler LLP
1000 Louisiana, 20th Floor
Houston, Texas  77002-5018
Tel:  713-646-1304
Fax:  713-751-1717
jwinton@bakerlaw.com

Attorneys for *Amicus Curiae*
The American Maritime Association

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

| | | |
|---|---|---|
| **KEITH COFFIN, ET AL.,** | ) | |
| | ) | |
| **Plaintiffs-Appellants** | ) | **No. 13-20144** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **BLESSEY MARINE SERVICES,** | ) | |
| **INCORPORATED,** | ) | |
| | ) | |
| **Defendants-Appellee.** | ) | |

_____

## CERTIFICATE OF INTERESTED PERSONS
_____

In accordance with Fed. R. App. P. 26.1 and 5th Cir. R. 28.2.1, the undersigned counsel of record certifies that the following listed persons and entities have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualifications or recusal.

1.  Keith Coffin, On Behalf of Himself and Others Similarly Situated (Plaintiff-Appellant)

2.  Eric Jones (Plaintiff-Appellant)

3.  Joe L. Rangel (Plaintiff-Appellant)

4.  Josh Fox (Plaintiff-Appellant)

5.  Gregory Robinson (Plaintiff-Appellant)

6.  Jason L. Villareal (Plaintiff-Appellant)

7.     Dustin Akins (Plaintiff-Appellant)

8.     Mason Fulkerson (Plaintff-Appellant)

9.     Zachary Latiolais (Plaintiff-Appellant)

10.    Steven F. Griffin, Jr. of Baker Donelson Bearman Caldwell &
       Berkowitz, PC (Attorney for Plaintiffs-Appellants)

11.    Mathew C. Juneau of Baker Donelson Bearman Caldwell &
       Berkowitz, PC (Attorney for Plaintiffs-Appellants)

12.    Blessey Marine Services, Incorporated (Defendant-Appellee)

13.    Mark J. Oberti of Oberti Sullivan, LLP (Attorney for Defendant-
       Appellee)

14.    The American Maritime Association (*Amicus Curiae*)

15.    Members of *Amicus Curiae* The American Maritime Association:

       a.     Alaska Tanker Company
       b.     Crowley Maritime Corporation
       c.     Horizon Lines, LLC
       d.     Intrepid Personnel and Provisioning
       e.     Maersk Line, Limited
       f.     OSG Ship Management, Inc.
       g.     Tote Services - formerly Interocean American Shipping Corp.

16.    James C. Winton of Baker & Hostetler LLP (Attorney for *Amicus
       Curiae*)

Dated:  July 5, 2013                    /s/ *J. C. Winton*
                                        James C. Winton
                                        Counsel for *Amicus Curiae*
                                        The American Maritime Association

## TABLE OF CONTENTS

**Page(s)**

1.    Certificate of Interested Persons ....................................................................... i

2.    Consent of All Parties ..................................................................................... 1

3.    Statement of Identity, Interest, and Authority ............................................... 1

4.    Summary of Argument .................................................................................... 3

5.    Argument ......................................................................................................... 4

6.    Conclusion and Request for Relief ................................................................. 7

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### RULES

FED. R. APP. P. 29(c)(4) ............................................................................................1

FED. R. APP. P. 29(c)(5) ............................................................................................1

FED. R. APP. P. 29(c)(6) ............................................................................................3

### STATUTES

Fair Labor Standards Act, 29 U.S.C.A. §§201-219...............................................4, 5, 8

Merchant Marine Act of 1936, 46 U.S.C. app. §1101 (2012) .......................................2

### OTHER AUTHORITIES

46 C.F.R. §§13.101-.509 (2009)...................................................................................4

## CONSENT OF ALL PARTIES

This *amicus curiae* brief is filed with the consent of all parties.

## STATEMENT OF IDENTITY, INTEREST, AND AUTHORITY[1]
### [FED. R. APP. P. 29(c)(4)]

The American Maritime Association ("AMA") is an employer trade association whose members own and/or operate US flag vessels in coastwise and ocean-going trade. AMA's members are: Alaska Tanker Company, LLC; Crowley Maritime Corporation; Horizon Lines, LLC; Intrepid Personnel and Provisioning; Maersk Line, Limited; OSG Ship Management, Inc.; and Tote Services (formerly Interocean American Shipping Corp.)

AMA member companies collectively operate the majority of ocean-going vessels now operating under the US flag. Some AMA members operate liquid cargo vessels and employ able bodied seamen ("ABs") who have documentation from the US Coast Guard attesting to their training in these specific duties and required for them to do this kind of work. Those ABs perform some of the same or similar duties to the tankermen at issue in the instant case.

---

[1] Pursuant to FED. R. APP. P. 29(c)(5), counsel for *amicus curiae* The American Maritime Association state that: (A) no counsel for any party authored this brief in whole or in part; (B) no party or party's counsel contributed money that was intended to fund preparing or submitting the brief; and that (C) no person contributed money that was intended to fund preparing or submitting the brief, other than The American Maritime Association.

Appellant Blessey Marine Services, Inc. ("Blessey") and similar companies transport liquid cargo in inland waterways. AMA members include companies that transport liquid cargo in coast-wise and overseas voyages, using both tug-barges similar to those used by Blessey and traditional tanker ships. Crewmembers on AMA member vessels can and often do perform some of the same kinds of work as the tankermen in issue in the instant appeal, although not necessarily as often or for as long. An adverse decision in the instant case could have implications for that segment of the US merchant marine fleet represented by AMA's membership.

The US merchant marine fleet, "is necessary for the national defense... that the United States shall have a merchant marine of the best equipped and most suitable types of vessels sufficient to carry the greater portion of its commerce and serve as a naval or military auxiliary in time of war or national emergency." Merchant Marine Act of 1936, 46 U.S.C. app. §1101 (2012). To this end, AMA members operate vessels owned by the US government through contracts with the Military Sealift Command ("MSC") or Maritime Administration ("MARAD"). MSC has liquid cargo ships that are operated by AMA members.[2] The purpose of

---

[2]U.S. Navy's Military Sealift Command, http://www.msc.navy.mil/latestnews/posters/MSC_USNavyShips.pdf (last visited July 3, 2013); http://www.msc.navy.mil/inventory/inventory.asp?var=LongtermCharteredTankership (last visited July 3, 2013).

such vessels is to create a ready reserve fleet and to have vessels and associated services available as an auxiliary military fleet.[3]

A financially viable merchant marine fleet is necessary for the nation's security.

## SUMMARY OF ARGUMENT
[FED. R. APP. P. 29(c)(6)]

For reasons set forth in Appellant's June 28, 2013 Original Brief on the Merits, AMA concurs that loading and unloading liquid cargo is seaman's work in aid of the operation of the vessel as a means of transportation. AMA will not repeat the argument ably presented there.

Rather, AMA wishes to bring to the Court's attention the potential impact of an adverse decision on its segment of the industry. If this Court were to issue a decision adverse to Blessey, we anticipate the same questions about other job classifications, *e.g.*, the able-bodied seamen (ABs) who perform similar loading and unloading duties for AMA members. Similarly, we anticipate that these questions could be raised about other crewmembers who perform work not as obviously connected to the navigation of the vessel, such as stewards, who are responsible for feeding the crew and housekeeping on the vessel. If a significant

---

[3] U.S. Department of Transportation, Maritime Administration, http://www.marad.dot.gov/about_us_landing_page/marad_faq/FAQ.htm#q1 (last visited July 3, 2013).

part of a crew suddenly were entitled to overtime under the Fair Labor Standards Act (29 U.S.C.A. §§201-219 (West, current through P.L. 113-13)) it could occasion a wholesale overhaul of the labor costs on which the financial viability of the US merchant marine industry is based.

## ARGUMENT

As noted, AMA members operate both coastwise and in oceangoing operations. Liquid cargo vessels owned and/or operated by AMA members include vessels similar to the tug-barges involved in the instant case and also traditional tankers.

To the extent that AMA members own or operate tug-barges, liquid cargo is loaded and unloaded by tankermen similar to those employed by Blessey. On traditional tankers, ABs perform the same or similar loading and unloading duties. These ABs have a Coast Guard document establishing that they are trained and qualified to perform the tankerman functions. (*See* generally, 46 C.F.R. §§13.101-.509 (2009)). Standards for tankerman training have been established under the International Convention on Standards of Training, Certification and Watchkeeping for Seafarers ("STCW"), which has been ratified by the United States, and which forms the basis for the tankerman training required by the Coast

Guard for this document.[4]  Given the involvement of these maritime bodies in the training and certification of ABs who perform loading and unloading duties on liquid cargo vessels, plainly the STCW and the Coast Guard consider these duties to be related to the operation of the vessel.

In the instant case, the issues are 1) whether loading and unloading liquid cargo is seamen's work and 2) if not, whether Blessey's tankermen spend more than twenty percent of their workday doing such work.  Appellees argue that if loading and unloading is not seamen's work, and if tankermen spend more than twenty percent of their work hours doing such tasks, they are not seamen exempt from the Fair Labor Standards Act.

This is somewhat less of a concern on oceangoing vessels.  Given the length of the trip between ports, ABs are unlikely to spend twenty percent of their work hours on loading and unloading duties; however, if the same vessel stops at several ports before an ocean crossing, it is very likely that an able bodied seaman could be exempt while crossing an ocean but non-exempt during the coastwise portion of a voyage that precedes or follows the longer crossing.  Put another way, the same

_____

[4] National Maritime Center, http://www.uscg.mil/nmc/stcw/default.asp?tab=4#TabbedPanels1 (last visited July 3, 2013).

seaman on the same vessel performing the same duties in the same chain of command would be a seaman one day but not the next.

Moreover, to the extent that AMA members have vessels exclusively engaged in coastwise trade, likely with more ports of call and more time loading and unloading, again, one vessel's ABs would be exempt but ABs on a sister ship operated by the same company, transporting the same cargo, and performing the same work, would not be.

Were this result to occur, employment on "brown water" vessels (such as Blessey's) and in coastwise trade would be more lucrative; inevitably, oceangoing vessels would have difficulty filling berths unless they offered compensation similar to that of higher paid brown water and coastwise ships. Employers would have difficulty filling lower paid, ocean-going berths. This would skew the wage scales under which AMA vessels operate, typically negotiated with a union, making tankermen disproportionately better compensated than higher ranking crewmembers.

Moreover, there is no practical way in which an AB or tankerman can be a seamen for only part of the time that he or she is on a vessel. Would (or when would) that employee be covered by the Jones Act? When would he or she be entitled to Maintenance and Cure or other benefits to which seamen are entitled?

By upholding the District Court, this Court could create an administrative impossibility.

A decision adverse to Blessey would mean that 1) a tankerman who must be licensed by the Coast Guard in loading and unloading duties and whose minimum training in those areas is set forth in the STCW was not acting as a seaman when performing what those bodies plainly see as seamen's duties; 2) would cause the same person to be a seaman one day but not the next despite holding the same job on both days; 3) would mean that able bodied seamen on one vessel operated by a company would be exempt while an able bodied seaman on another vessel operated by the same company, carrying the same cargo and performing largely the same duties, would not be; 4) would likely cause serious manning difficulty and/or require an overhaul of the existing, negotiated wage scale; and 5) would create a hybrid class of part-time seamen whose coverage by various laws and benefits would be impossible to administer.  All of these facts, and the recordkeeping morass they would require, threaten the financial stability of the merchant marine industry vital to the country's defense.

## CONCLUSION AND REQUEST FOR RELIEF

The District Court's decision would make tankermen unique among the crew in their entitlement to overtime.  As shown above, that status could be conferred and revoked arbitrarily from day to day based solely on the distance

between ports.  If there is any substance to the qualifications for exemptions under the Fair Labor Standards Act, this cannot be the result.

Given the nation's need for a financially viable merchant marine fleet, and given the damage that inevitably would be done to the labor cost structure of this industry if there were an adverse result, we urge the Court to find that loading and unloading liquid cargo are seaman's duties and accordingly reverse the District Court's decision.

Respectfully Submitted,

/s/ *J. C. Winton*
James C. Winton
Baker & Hostetler LLP
1000 Louisiana, 20th Floor
Houston, TX 77002-5018
Tel. 713-646-1304
Fax 713-751-1717
jwinton@bakerlaw.com

ATTORNEYS FOR THE AMERICAN MARITIME ASSOCIATION

## CERTIFICATE OF SERVICE

I hereby certify that on the 5th day of July 2013, I electronically filed and served copies of the foregoing motion and attachment on the following counsel via electronic filing with the Court's CM.ECF system:

*Counsel for Appellant*

Steven F. Griffin, Jr., Esq.
Matthew C. Juneau, Esq.
Baker Donelson Bearman Caldwell & Berkowitz, PC
201 St. Charles Ave. Suite 3600
New Orleans, LA 70170

*Counsel for Appellees*

Mark J. Oberti, Esq.
Oberti Sullivan, LLP
723 Main St. Suite 340
Houston, TX 77002

/s/ *J. C. Winton*
James C. Winton

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)(7)

1.     This brief complies with the type-volume limitation of FED. R. APP. P. 32(a)(7)(B) because this brief contains 1,162 words, excluding the parts of the brief exempted by FED. R. APP. P. 32(a)(7)(B)(iii).

2.     This brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6).

Dated: July 5, 2013

/s/ *J. C. Winton*
James C. Winton